```
            IN THE UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF KANSAS


STEVEN RAY THOMAS,              )
                                )
               Plaintiff,       )    CIVIL ACTION
                                )
v.                              )    No.  04-3315-MLB
                                )
NEAL R. BROCKBANK, et al.,      )
                                )
               Defendants.      )
                                )
```

**MEMORANDUM AND ORDER**

Before the court are the following:

1. Defendant Michael Torrence's motion for summary judgment (Doc. 65 and 66);

2. Defendants Dennis Goff and Janet Myers' motion for summary judgment (Docs. 77 and 78);

3. Plaintiff's response to Michael Torrence's motion for summary judgment (Doc. 80);

4. Michael Torrence's reply (Doc. 81); and

5. Plaintiff's response to Dennis Goff and Janet Myers' motion for summary judgment (Doc. 82) and

6. Defendants Dennis Goff and Janet Myers' reply (Doc. 83).

BACKGROUND

Plaintiff is a Kansas prisoner. He brought this case under 42 U.S.C. § 1983 alleging that various prison medical personnel and officials were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. Plaintiff initially named as defendants Michael Torrence, Dennis Goff, Janet Myers, Neal Brockbank, Louis E. Bruce, Correct Care Solutions, State of Kansas and the Kansas Department of Corrections (Doc. 1). By order

dated February 4, 2005 (Doc. 49), plaintiff was permitted to amend his complaint. The amended complaint (Doc. 50) named only defendants Torrence, Goff and Myers. Prior to the filing of the amended complaint, defendants Bruce and Correct Care Solutions filed motions to dismiss. By Memorandum and Order of April 19, 2005 (Doc. 62), the motions were sustained.

Plaintiff sought appointment of counsel on at least three occasions (Docs. 38, 57 and 72). The court has considered plaintiff's requests according to the standards set forth in Castner v. Colorado Springs Cablevision, 979 F.2d 1417 (10th Cir. 1992). Because plaintiff is a state prisoner, the court will assume that plaintiff cannot pay for counsel. It does not appear that he has attempted to secure counsel. For the reasons set forth herein, the court finds that plaintiff's allegations of discrimination are not meritorious. Finally, the court finds that plaintiff has adequately presented his case without counsel, notwithstanding his claim that he is now blind in one eye. Therefore, plaintiff's requests for appointment of counsel are denied.

On August 4, 2005, plaintiff sent a letter to the clerk of this court requesting service of summons on Neal Brockbank in Pittsburg, Kansas. According to allegations of plaintiff's initial complaint, plaintiff suffered an eye injury playing handball. Brockbank, a physician, was immediately called and after thirty minutes, arrived to examine plaintiff. Dr. Brockbank supposedly told plaintiff that he was scheduling surgery for the following day and that plaintiff would have to stay in the clinic until his

operation was performed. The next day, defendants Goff and Myers allegedly cancelled Dr. Brockbank's scheduled surgery. According to plaintiff:

> Dr. Brockbank exhibited deliberate indifference in carrying out his responsibilities as a licensed physician. Dr. Brockbank was fully aware that Janet Myers and Dennis Goff deliberately and callously defied his specific instructions by unlawfully terminating his request for my immediate surgery, despite the fact these two are his subordinates.
>
> Dr. Brockbank stood by as a silent participant in the deprivation of my rights by not reporting subordinates overriding his expressed instructions that he deemed necessary . . . . Dr. Brockbank informed me on August 16, 2004 that his request for my immediate eye surgery was denied by Dennis Goff and Janet Myers because it would cost the State, and KDOC too much money if my eye surgery was performed . . . .

(Doc. 1). Thereafter, in his amended complaint, plaintiff mentioned Dr. Brockbank but made no claims of wrongdoing against him. Plaintiff sought damages only against defendants Torrence, Goff and Myers (Doc. 50).

It does not appear that plaintiff's request for service was ever acted upon. Dr. Brockbank has not been served, either with plaintiff's initial or amended complaints. As the court explained in its April 19, 2005 Memorandum and Order, an amended complaint supercedes all prior versions of the complaint unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading. Plaintiff's amended complaint does not do this and therefore states no claims against Dr. Brockbank. Therefore, there would have been no reason for the clerk to issue summons.

<u>Summary Judgment Standards</u>

-3-

The parties are familiar with the standards pertaining to summary judgment, which will be commented upon only if necessary.

### Torrence's Motion for Summary Judgment

#### Uncontroverted Facts

Plaintiff is a state prisoner who sustained an eye injury during a handball game with another inmate on April 25, 2004. He was sent to the Hutchinson Correctional Facility clinic for treatment where he was initially examined by Dr. Neal Brockbank. Dr. Brockbank prescribed medication and gave treatment instructions until plaintiff could be seen the following day by Correct Care Solutions staff.

On April 27, 2004, plaintiff was examined by Dr. Michael Torrence who determined that plaintiff's eyeball was scratched and the pupil was dilated. Dr. Torrence continued plaintiff's medication and directed plaintiff to wear an eye patch.

On May 25, 2004, plaintiff was examined by Dr. Torrence and again on July 6, 2004. He advised plaintiff that he was going to refer plaintiff to a specialist. Dr. Torrence saw plaintiff again on August 10, 2004 and told plaintiff that he intended to renew his order for referral to a specialist. Thereafter, on August 19, 2004, plaintiff was seen by Dr. Depenbusch, an outside eye specialist, who examined plaintiff and prescribed medication.

On July 12, 2004, plaintiff filed a prison grievance in which he alleged that he had received inadequate treatment on the day of his injury and that defendant Goff had terminated the surgery allegedly scheduled by Dr. Brockbank. Plaintiff also alleged that the staff of Correct Care Solutions "tried to cover their tracks"

-4-

by having Dr. Torrence see plaintiff.  Plaintiff alleged that Dr. Torrence was not qualified to treat his injuries.  One week later, on July 19, 2004, defendant Myers, Health Services Administrator, responded to plaintiff's grievance regarding Dr. Torrence's treatment as follows:

> Mr. Goff did see you the following morning and asked that Dr. Torrence see you to evaluate your eye injury. Dr. Torrence saw you on 4-26-04. He continued treatment prescribed and ordered additional eye drops. Dr. Torrence saw you in follow up on 5-10-04.  Your cornea was clear, your retina was flat, no holes or tears were seen. Your corneal abrasion was 98% resolved.  You continued to be seen and treated by Dr. Torrence.  Dr. Torrence did consult with Dr. Depenbusch, who is an ophthalmologist, regarding your eye injury. Recommendations by Dr. Depenbusch were followed.  Your request to be seen by an eye trauma surgeon is dependent upon the site eye doctor and HCF's opinion. To date this has not been recommended.

(Doc. 66 at 4-5).

The court has carefully reviewed plaintiff's response to Dr. Torrence's motion.  The response, which is somewhat difficult to follow, contains the following "facts" with respect to Dr. Torrence:

1. Plaintiff avers that "Dr. Torrence eye glass Doctor examined me 4-27-2004 and informed me that I have permanent damage.  I asked Dr. Torrence why was my surgery cancelled, Torrence stated the money.  Dr. Torrence determined that plaintiff's eyeball was only scratched and pupil dilated.  Torrence is an optometrist and isn't qualified to even begin diagnosing a serious eye injury.  Dr. Torrence told me it was a scratched, and permanent damaged too an I didn't need surgery!"

2. Letter dated September 22, 2004 from F. L. Depenbusch,

-5-

M.D. of Hutchinson Eye Physicians & Surgeons, P.A. to Dr. Torrence, which states:

Dear Dr. Torrence:

This patient was seen in follow-up on 9-22-04. As you know he had a history of trauma of the right eye and has a traumatic mydriasis. Also he has an elevated eye pressure in that eye. His chief complaint mainly is photophobia and that his vision is changing some especially in the left eye. He also complains some of watering and ache near the brow. We know he sustained an injury on 4-25-04 when he was stuck by another inmate a thumb in the right eye. He stated that the eye has been dilated since that time. The other history is he states his left eye was hit with a bat in the past. He apparently sustained a laceration across his eye and he was also struck in the eye with the bumper jack and stabbed with a knife in the same area. Apparently after his injury in April he was in the clinic for 17 days and they stated that for two weeks he could only see light and then it has taken him three months to see to read. At any rate on his first visit the intraocular tension was 31 on the right and 17 on the left. The visual acuity was 20/30 right and 20/50 left at distance and 20/30 right and 20/25 left at near. He had traumatic mydriasis. Gonioscopy did not reveal any angle recession. His lenses were clear and his dilated funduscopic exam bilaterally was normal. On 9-22-04 his visual acuity is 20/50 right and 20/20 left at distance with corrective lenses and near is 20/25 -3 each. His pupil measured 8 mm on the right and 4 on the left. Again his intraocular tension was 38 in the right eye and 14 in the left. Again his eye was dilated and the retina appeared to be in good condition. His anterior segment was normal without any cell or flare, etc. He stated that he was to go to work outdoors in the horticulture area and he just could not stand the light.

What I am doing is suggesting 2% Pilocarpine drops four times a day in the right eye which should help bring down the pupil and cut down some on the photophobia and bring down the eye pressure. In addition I am suggesting .25% Timolol drops twice a

      day in the right eye.  I would[1]

3.    Letter dated October 13, 2004 from Dr. Depenbusch to Dr. Torrence, which states:

Dear Dr. Torrence:

As you know this gentleman was struck in the right eye with the thumb on 4-25-04.  His pupil became dilated and has stayed dilated.  He is photophobic.  Please see my previous letter for other details.  There is some question as to whether there is any visual field loss.  I have finally gotten 10% Pilocarpine drops four times a day and .25 Timolol drops twice a day in the right eye.  This brought the pressure down to 12.  The pressure in the other eye is also 12 mmHg.  His visual acuity was 20/20; that is at distance without correction.  I am hoping that the Pilocarpine will continue bring his pupils down some.  He probably should wear sunglasses when he is outdoors.  I would like to re-evaluate him in about two months.

Thank you for your referral.

The aforesaid "facts", which are taken from plaintiff's submissions and which are construed in his favor, clearly demonstrate that he has no Eighth Amendment claim and that Dr. Torrence is entitled to summary judgment.  In recent years, the Tenth Circuit has decided a number of cases relating to prisoner medical issues; so many, in fact, that West has ceased to select most of them for publication.  An example is the case of Thomas v. Bruce, 125 F. Appx. 964 (10th Cir. 2005) involving the same plaintiff in this case.  The Tenth Circuit observed:

> Conditions of prisoner confinement create an obligation on the state to provide adequate health care for a prisoner. Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct.

---

[1] Page two of the letter is not included in plaintiff's response. However, exhibit 15 of the Martinez report is the identical letter. Page two concludes "like to recheck his pressure and see how he is doing in about three weeks."

-7-

> 285, 50 L. Ed. 2d 251 (1976). In light of this duty, we have held that "[a] prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." Sealock v. Colo., 218 F.3d 1205, 1209 (10th Cir. 2000). However, not all failures to provide health care rise to the level of a constitutional violation. Indeed, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106, 97 S. Ct. 285. "Deliberate indifference" is analyzed according to an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); Sealock, 218 F.3d at 1209.  Under the objective component, deliberate indifference occurs if the deprivation is of a sufficiently serious nature, which we have held is "one that has been diagnosed by a physician as mandating treatment...." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999). Under the subjective component, petitioner must establish that the "defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." Id. (quotation omitted).

Id. at 966.

For purposes of Dr. Torrence's motion, the court will assume that plaintiff's "facts" are sufficient to establish the objective component. However, plaintiff's "facts" completely fail to raise a dispute sufficient to create a jury issue regarding the subjective component. On the contrary, the evidence is undisputed that Dr. Torrence examined plaintiff on four occasions in an approximate four month period. A prisoner's disagreement with a diagnosis or a prescribed course of treatment does not state a constitutional violation. Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 811 (10th Cir. 1999). But more to the point, the letters written by Dr. Depenbusch, whose qualifications plaintiff does not criticize, clearly reflect no contrary evaluation of Dr. Torrence's diagnosis and treatment. Plaintiff's complaints

-8-

regarding Dr. Torrence's qualifications are both immaterial and frivolous.

Accordingly, Dr. Torrence's motion for summary judgment (Docs. 65 and 66) is sustained.

<u>Defendants Goff and Myers' Motion for Summary Judgment</u>

<u>Uncontroverted Facts</u>

In addition to the facts pertaining to the claims against Dr. Torrence, defendants Goff and Myers have alleged the following uncontroverted facts, all of which are properly supported by affidavits:

> 1. Neither Dr. Brockbank, Dr. Torrence or any other physician or health care provider indicated at any time to Plaintiff that surgery on his eye was either ordered, required or even suggested. (<u>Martinez</u> Report, Statement of Uncontroverted Facts #6.)
>
> 2. Dennis Goff is not a medical doctor and does not have the authority to countermand a doctor's order. At no time did he cancel any order relating to the treatment of Plaintiff's eye. (<u>Martinez</u> Report, Statement of Uncontroverted Facts #4.)
>
> 3. Although Janet Myers is a registered nurse at HCF, she is an administrator. She has never seen Plaintiff for purposes of medical treatment. At no time did she cancel any order relating to the treatment of Plaintiff's eye. In fact, she does not recall having any direct contact with Plaintiff in relation to his eye injury. (<u>Martinez</u> Report, Statement of Uncontroverted Facts #5.)

The court has scoured plaintiff's submissions to determine whether he has any evidence to support his claims against Goff and Myers or to controvert their facts. Plaintiff has not followed the proper format for responding to defendants' statements of uncontroverted fact. Rather, he has supplied a number of his own affidavits and it is from these that the following averments have been taken:

1. After being in the clinic around #6 day at H.C.F.'s clinic, Dennis Goff RN came in to my cell at the HCF clinic and Dennis Goff "Confiseate my eye patch! At this same time Dennis Goff stated to me. You are taking a lot of eye drops, medication, and with these eye drops you are taking you need to get air to that eye, or you could get a eye infection or eye contamination.

2. Dennis Goff and Janet Myers are not licensed physicians. Janet Myers illegally gave Dennis Goff the unlimited and unlawful delegated authority as "the final policy making authority with respect to medical affairs.

   The condition of my injury was objectively serous and to this day Thomas only has 5% vision out of his right eye, and like Dennis Goff said around year Mr. Thomas you have permanently this said in front of Dr. Neil B. Brockbank. I don't remember date.

   To this: Nurse Dennis Goff under K.S.A. 21-3711 Making False Information by ordering Class A-B medecations. Under: Dr. Dennis Goff MD. I have seen his name on some of HCF medication. Goff masquerading as policy maker and a licensed Doctor. "Goff."

3. Janet Myers is a registered nurse at HCF, she is an administrator.

   To this day Nov. 1, 2005 I have been 95% Blind for about two months now. I have not had an operation on my right eye. My pupil is permanently dialated (sic) creating severe pain and my right eye is almost obiterated. Janet Myers a Health Services Administrator did no, and disregarded an excessive risk to my health and safety, and they were of the facts and substantial risk of serious harm if Thomas didn't get the needed surgery. J. Myers read the facts in the grievance of Thomas serious eye injury and was conscious of a disregard of a substantial risk of serious harm.

   Janet Myers is the administrator, she is deceptively now trying cover Mr. tracks for all defendants.

Plaintiffs' averments do not create any genuine issues of material fact sufficient to justify a trial. Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence must be based on more than mere speculation, conjecture or surmise.

-10-

Bones v. Honeywell International, Inc., 366 F.3d 869, 875 (10th Cir. 2004). Similarly, conclusory averments which track the verbiage of legal standards but without supporting facts do not satisfy the non-moving party's burden. Under the law applicable to this case, no reasonable jury would ever return a verdict in favor of plaintiff against Goff and Myers on the subjective component.[2] Accordingly, their motion for summary judgment (Docs. 77 and 78) is sustained.

    IT IS SO ORDERED.

    Dated this __8th__ day of December 2005, at Wichita, Kansas.

                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE

---

    [2]According to clinic notes submitted in connection with the Martinez report, none of which are disputed, plaintiff was seen or evaluated by medical personnel for eye and other complaints on at least thirty occasions between the date of his injury and the date this case was filed (9/22/04). How many jurors, even those with medical insurance, could expect to visit their medical care provider over thirty times in a five month period except, perhaps, those having the gravest of medical problems? It is almost a matter of judicial notice that there is a medical care crisis in this country, especially for the millions of (presumably law abiding) citizens who do not have medical insurance. None of these citizens can claim a Constitutional right to adequate medical care so none have access to the federal courts to seek enforcement of such a right. Yet convicted criminals have such access and avail themselves of it on a regular basis. There is something wrong with this picture. One may well ask: "Is it really necessary or fair that a convicted criminal should have a direct right of access to the federal courts to assert frequently unmeritorious complaints regarding his or her medical care during incarceration?"